IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RECEIVED

2020 MAY 18 AM 10: 05

[...] M. GOULD
CLERK, U.S. DISTRICT COUR[.]
TNWD OF TN MEMPHIS

STEPHEN COOK
 Petitioner,     )
            )
            )
            ) Case No. 2:11-CR-20006-01-SHM
vs.          )
            )
UNITED STATES OF AMERICA )
 Respondent.     )

\*\*\* \*\*\* \*\*\* \*\*\*

## EMERGENCY MOTION PURSUANT TO THE FIRST STEP ACT'S AMENDMENT 3582(C)(1)(A) FOR EXTRAORDINARY AND COMPELLING REASONS

COMES NOW, Petitioner, Stephen Cook, by and through In propria Persona, [r]espectfully moves this Honorable Court to reduce his prison sentence under Title 18 U.S.C. § 3582(c)(1)(A), as amended under the First Step Act. PL. 115-391, 132 Stat. 5194 (December 21, 2018).

The First Step Act of 2018 Title 18 U.S.C. § 3582(c)(1)(A) permits Defendants to move a Sentencing Court for modification of sentence "after the Defendant has fully exhausted all administrative right to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the Defendant's behalf or the lapse of thiryt (30) days from the receipt of such a request by the Warden of the Defendant's facility, whichever is earlier.

Section 3582(c)(1)(A) provides in pertinent part: [T]he Court... may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the un-served portion of the original term of imprisonment), after considering factors set forth in section 3553(a) to the extent that they are applicable, if it find (1) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

(1)

U.S.S.G. § 1B1.13 and related commentary from the Sentencing Commission were most recently updated on [November 01, 2018], before the effective date of the First Step Act of December 21, 2018. Accordingly, the guideline and commentary still presume that a reduction in sentence under § 3582(c)(1)(A) must be made upon motion of the Director of Bureau of Prisons (BOP).

The commentary describes certain circumstances under which "extraordinary and compelling reasons" for a reduction in Sentence are deemed to exist, but the commentary does not suggest the list is exclusive. Application Note 1(D), titled "other reasons" is a catchall provision, which suggests that the Director may determine "there exist in the Defendant's case extraordinary and compelling reasons other than, or in combination with, the reasons described in Subdivision (A) through (C).

What this means for a Defendant is that a valid basis for relief, is one where: (a) An injustice of facing a term of incarceration longer than Congress now deems warranted for the crime asserted; such as: § 924(e); 18 U.S.C. 1959; § 1962, etc; (b) Compassionate Release; (c) Elderly Offender Home Detention Program and Improper Medical Treatment. Therefore, based on the above listed, the catchall provision of Application Note 1 (D), in wake of the First Step Act's amendment to § 3582(c)(1)(A) affords the Court with broad discretion to reduce a Defendant's sentence if extraordinary and compelling reasons are shown.

Furthermore, on March 26, 2020, the President of the United States signed the "Coronavirus Aid, Relief, and Economic Security Act (or CARES Act) into Law. The CARES Act authorizes the Attorney General to take several actions regarding the prevention of COVID-19 in the Federal Prison System; as well as, granting the authority to the Attorney General to take decisive action regarding the placement of Prisoners into Home Confinement.

Moreover, Attorney General Barr gave guidance regarding how the CARES Act should be carried out, which indicated that the BOP is to consider the totality of circumstances for each individual inmate; such as:

- The Age and Vulnerability;
- The Security Level of the Facility;
- The Inmate's conduct in Prison;
- The Inmate's score under PATTERN;
- The Inmate's verified re-entry plan;
- The Crime of Conviction.

Lastly, the Memorandum goes on to state that the BOP Medical Director or his designee shall make an "assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility; as well as, the risks of COVID-19 at the location in which the inmate seeks Home Confinement."

Finally, Mr. Cook filed his request for Compassionate Release to Warden Quinatana on March 30, 2020; therefore, he is properly before this Court pursuant to the provisions set forth in the First Step Act of 2018. **See Exhibit A.**

(3)

**FACTUAL BACKGROUND**

1. Petitioner pleaded guilty to one count of Conspiracy to possess with intent to Distribute Marijuana under Title 21 U.S.C. § 846 on January 13, 2012, See Doc. 808. This Court sentenced Petitioner to 360-months imprisonment;

2. Petitioner is currently incarcerated by the Federal Bureau of Prisons ("BOP") at the Federal Medical Center ("FMC") Lexington, Kentucky. His current Projected Release Date is Ausgust 05, 2036;

3. Petitioner exhausted all available administrative remedies by seeking "Compassionate Release" through the Warden at FMC Lexington on March 30, 2020; therefore, based on the U.S.S.G. § 1B1.13 and related commentary, which describes certain circumstances under which "extraordinary and compelling reasons" for a reduction in sentence are deemed to exist. Application Note 1(D), titled "other reasons" is a catchall provision, which suggests that the Director may determine "there exist in the Petitioner's case extraordinary and compelling reasons described in subsection (A) through(C);

4. The President signed the "Coronavirus Aid, Relief, and Economic Security Act (or CARES Act) into Law on March 26, 2020. The CARES Act authorized the Attorney General to take actions regarding the prevention of COVID-19. The CARES Act also gives the Attorney General authority to take decisive action regarding placement of Prisoners into Home Confinement;

5. The BOP has long struggled with "insufficient numbers of Physicians and nursing staff to perform required clinical and other related tasks." General Accounting Office ("GAO"), Bureau of Prisons Healt Care: Inmates' Access to Healtcare is limited by lack of Clinical Staff, GAO/HEHS-94-36, February 10, 1994, at [http://archive.gao.gov/t2pba4/151025.pdf, last visited 05/21/2019]. Chief among the BOP's concerns is how "to contain inmate health care costs and increase efficiency of services." GAO, Federal Prisons: Responses to Questions Related to Containing Healthcare Costs for an Increasing Inmate Population, GCD-00-160R, June 14, 2000, at 4 [http://www.gao.gov/archive/2000/gg00160r.pdf, last visited 05/31/2019]. The result has been, among other things, a reliance on para-professionals, rather than more highly paid physicians. GAO Responses to Questions Related to Containing Healthcare Costs, GGD-00-160R, at 2;

6. A 2008 Inspector General's audit found that the BOP's cost-cutter Healtcare did effectively contain healthcare cost-per-inmate. But, the OIG found that "each of the BOP institutions we tested did not always provide recommemded preventative healthcare to inmates." U.S. Department of Justice, Office of the Inspector General, Federal Bureau of Prisons's [sic] Efforts to Manage Inmate Healthcare, Audit Report 08-08 [February 2008], at ii [http://www.justice.gov/oig/reports/BOP/a0808/final.pdf, last visited 05/31/2019. Further, "BOP instiutions did not consistently provide medical services recommended by BOP guidelines to inmates." Efforts to Manage Inmate Healthcare, audit Report 08-08, 1t 15.

(4)

7. Four years ago, the OIG still "found that limited institutions Staff and inadequate Staff training affect the BOP's ability to address the needs of aging inmates." See, USDOJ-OIG, Evaluation and Inspections Division "The Impact of an Aging Inmate Population in the Federal Bureau of Prisons, " at i, Report 15-05 [May 2015] [http://oig. justice.gov/reports/2015e1505.pdf, last visited 05/31/2019. The OIG further found that the increasing population of aging inmates has resulted in a need for increased trips outside of institutions to address their medical needs, but that institutions lack Correctional Officers to Staff these trips and have limited Medical Staff within institutions. As a result, aging inmates experience delays receiving medical care. For example; using BOP data from one institution, we found that the average wait time for Inmates, including aging inmates, to be seen by an outside medical specialist for cardiology, neuro-surgery, and urology to be 114 days." Impact of an Aging Inmate Population, at ii;

8. Understaffing and the resulting misuse of the strained resources that do exist permeated the OIG report, "Review of the Federal Bureau of Prisons' Medical Staffing Challenges, "Re. 16-02 [March 2016] [http:// oig.justice.gov/reports/2016e1602.pdf, last visited 05/31/2019. These OIG conclusions, at 26-27, recognize that, medical pay cannot compare to private sector pay, diminishing an already thin applicant pool. They also recognize that, because the BOP cannot attract permanent employees, expenditures tend to go at higher cost to contracted physicians and other specialists. As a result, BOP Medical Cadres remain understaffed, even years after recognizing the shortage of medical care;

9. Thusly, on information and belief, and though a Prison Hospital; FMC Lexington must contract with community healthcare providers since FMC Lexington has limited Healthcare Staff, services, and other resources available to meet the needs of Inmates confined there. Petitioner avers that he has been to the University of Kentucky Medical Center ("UKMC") (a Contracted Entity") for his healthcare needs. Petitioner was returned by UKMC Physicians to FMC Lexington with instructions for aftercare and directions for follow-up oversight. Although Petitioner was released back to FMC Lexington, he still requires aggressive aftercare.

## MEDICAL ISSUES BACKGROUND

1. Mr. Stephen Cook is a 48-year old individual who has served 108-months of his Federal Sentence imposed by this Court. The Following is a list Petitioner's medical conditions with Exhibit designations:

- Petitioner was born with Sickle-Cell Anemia. Because of the Sickle-Cell Illness, Petitioner is required to have monthly Aphoresis Treatment for this disorder. This procedure is conducted by the University of Kentucky Medical Center ("UKMC"); therefore, Petitioner has to be transported fdrom FMC Lexington. Additionally, Petitioner is required to take the following medications: 2000mg of Hydroxyurea; 50,000 Units of Vitamin D; 5mg Oxycontin 3x Daily; 30mg Morphine 1x Daily; and 200mg of Delerasirox 1x Daily. **See, Exhibit B;**

- Petitioner was diagnosed with Hypertension in 2015. He is required to take the following medications: 60mg Nifedipine 1x Daily; and 30mg Linsinopril 1x Daily. **See, Exhibit B;**

- Petitioner was diagnosed with Congestive Heart Failure in 2017. He is required to take the following medications: 50mg Carvedilol 2x Daily; 81mg Aspirin 1x Daily; and 20mg Furosemide 1x Daily. **See, Exhibit B;**

- Petitioner was diagnosed with Depression in 2017. He is required to take the following medication: 50mg Sertaline. **See, Exhibit B.**

Therefore, Petitioner's medical condition is very critical and must be managed by qualified medical professionals. Under Petitioner's current circumstances, being transported for the Aphoresis Treatment further exposes Petitioner to contracting the COVID-19 virus. That said, Home Confinement is an option that will mitigate the risk for the Petitioner.

## DISCUSSION

A court Generally may not correct or modify a Prison sentence once it has been imposed, unless permitted by statute or by Rule 35 of the Fed. R. Crim. P. Petitioner Cook is seeking modification of his sentence under the Compassionate Release provision of Title 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 [December 21, 2018].

(6)

The Statute added a provision to allow Defendants, not only the Director of the BOP, to file a motion for reduction of sentence after exhausting administrative remedies or waiting 30-days after the Warden's receipt of request.

Section 3582(c)(1)(A) now provides that the Court may reduce an imposed term of imprisonment upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the Defendant after Defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the Defendant's behalf or lapse of 30-days from the receipt of such a request by the Warden of the Defendant's facility; whichever, is earlier, "after considering the applicable factors set forth in section 3553(a), if it finds that 'extraordinary and compelling reasons'warrant such a reduction" and "that such a reduction is consistent with applicable Policy Statements issued by the Sentencing Commission[.]"

On the threshold exhaustion or 30-day requirement, Petitioner asserts that he has exhausted his administrative remedies pursuant to the provisions set forth in 3582(c)(1)(A), Petitioner further asserts that the exhaustion requirement should deemed satisfied due to the BOP failure to bring a motion on the Petitioner's behalf; as well as, the lapse of 30-days.  **See, Exhibit A.**

(7)

Due to the recent outbreak of the COVID-19 virus, Petitioner is seeking a sentence reduction based on "extraordinary and compelling reasons"; and because of the increasing risk to his health, which is associated with the deadly COVID-19 virus. Petitioner concedes that the COVID-19 virus alone may not be in conformity with the guidelines set forth in U.S.S.G. 1b1.13, Application Note 1(D).

However, Petitioner's Immune System Deficiency caused by the Sickle-Cell puts his at extreme risk to contract the deadly COVID-19 virus. It has been shown that the COVID-19 virus poses a very severe risk to incarcerated persons with underlying health conditions. This Court is aware of the dynamic nature of the COVID-19 virus throughout the BOP and how it affects incarcerated persons.

Since the spread of the COVID-19 virus throughout the BOP, Hundreds of Staff and Inmates has contracted the deadly virus; as well as, multiple deaths. Additionally, the Office of the Inspector General ("OIG") Report "Review of the Federal Bureau of Prisons' Medical Staffing (See, Factual Background, #8 Pg. 5) suggests that understaffing permeated the OIG report **Supra**.

Petitioner is currently incarerated at the Federal Medical Center Lexington ("FMC" Lexington). Although a medical facility, inmate acute care is provided by the University of Kentucky Medical Center ("UKMC"), which is provided off-site. Therefore, inmates are transported to UKMC for their acute medical need. (See, Factual Background #7 Pg. 5-USDOJ-OIG, Evaluation and Inspections Division "The Impact of an Aging Inmate Population in the Federal Bureau of Prisons) **Supra**.

FMC Lexington has multiple confirmed cases for both Staff and Inmates of the deadly COVID-q9 virus. Due to the lack of qualified Staff and lack of testing for the deadly virus, the number of Staff and Inmates infected will increase once testing is implemented because asymptomatic people do not show signs of the infection.

Therefore, Petitioner is at a very high risk of contracting the deadly virus due his underlying medical conditions. If FMC Lexington[1] tested Staff and Inmates for the deadly COVID-19 virus, Petitioner's could be potentially mitigated. However, the Staff at FMC Lexington claim they do not have funding for testing, yet the CARES Act authorized specific funding for testing.

Thusly, Petitioner has shown that his conerns for contracting the deadly COVID-19 virus is legitimate, with other factors to consider in his particular case (underlying medical conditions) present extraordinary and compelling reasons that warrant modification of his sentence and immediate release Petitioner to Home Confinement pursuant to Title 18 U.S.C. § 3582(c)(1)(A), which requires that a reduction of sentence under this provision be" consistent with applicable Policy Statements issued by the sentencing Commission."

Further, the Lexington Fayette County Health Department on May 06, 2020 requested that every Staff member that entered the FMC Lexington facility after April 17, 2020 be tested for the deadly COVID-19 virus. If the test are not done voluntarily, the County Health Department will make it mandatory. Additionally, the County Health Department was denied access to the FMC Lexington facility on May 06, 2020.

---

1 FMC Lexington is currently being investigated by the Fayette County Health Department for failure to report the number of cases of the COVID-19 virus.

Exposure to COVID-19 does meet the criteria for extraordinary and compelling reasons since the virus is contagious and can lead to death. Currently the virus is spreading rapidly throughout FMC Lexington, which increase Petitioner's chance of contracting the deadly COVID-19[2] virus. Furthermore, Petitioner's Immune Deficiency Disorder is a qualified medical condition set forth in the Sentencing Commission's Policy Statement statement on Compassionate Release, U.S.S.G. 1B1.13.

The relevant Policy Statement identifies medical conditions that meet the extraordinary and compelling requirement as those where a Defendant (i) Suffering from a terminal, or (ii) Suffering from a serious physical or medical condition, serious cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover, U.S.S.G. § 1B1.13 cmt. N. 1 (A).

Therefore, a [r]eduction in sentence due to the outbreak of the COVID-19 virus and the spread of said virus throughout FMC Lexington; as well as, Petitioner's underlying medical conditions is consistent with the applicable Policy Statement of the Sentencing Commission as required by U.S.S.G. 1B1.13 and 3582(c)(1)(A).

_____

[2] See, proclamation on Declaring a National Emergency concerning the Novel Coronavirus Disease COVID-19 Outbreak-http://www.whitehouse.gov/preseidential-actions/proclamation-declaring-national-emergency--concerning-novel-coronavirus-disease-covid-19-outbreak/ (March 13, 2020).

As of April 27, 2020, the new strain of Coronavirus, which causes COVID-19 has infected over  2.9 Million people Worldwide, leading to at least 201,000 [d]eaths.. Coronavirus Map: Tracking the spread of the outbreak, The New York Times (April 27, 2020), at http://nytims/2u4kmud (updating regularly). The CDC has issued guidance that individuals at higher risk of contracting COVID-19 adults over 60-years old and people with Chronic Medical Conditions; such as, diabetes and Chronic Kidney Disease-take immediate preventive actions; including, avoiding crowded areas and staying at home as much as possible. People at risk for serious illness from COVID-19, CDC(March 16, 2020) at **http://bitly/2vgUt1p.**

Mr. Cook is 48 Years-Old and has multiple conditions that the CDC has advised correspondingly with a high risk of serious or life-threatening COVID-19 infection.  While Mr. Cook's age and medical conditions place him at even greater risk of contracting COVID-19, conditions of confinement create the ideal environment for the transmission of contagious disease. Inmates cycle in and out of BOP Facilities and people work in the facilities leave and return daily. According to Public Health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe, infection control is challenging in these settings."[3]

---

[3] Joseph A. Bick (2007)-Information Control in Jails and Prisons. Clinical Infectious
   Diseases 45(8): 1047-1055, at http://dol.org/10.1086/521910.

These risk are being realized right now in various Bureau of Prisons facilities, as COVID-19 has made its' way into various prisons and is spreading rapidly. As of April 27, 2020, the Bureaus of Prisons Website is reporting 1,049 confirmed cases among BOP inmates and 330 among Staff. See, Bureau of Prisons COVID-19 cases, available at **http://www.bop.gov/ coronavirus/.** In addition, those confirmed cases do not include inmates and Staff who BOP classifies as having "recovered." To date the BOP is reporting that 28 inmates have died from the illness.

The rapid spread of COVID-19 in certain BOP facilites prompted United States Attorney General William Barr to issue a memorandum on April 03, 2020, "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons, " and Directing the BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC" to determine their suitability for Home Confinement.

Attorney General Barr further directed that "[f]or all inmates whom you deem suitable for Home Confinement, you are directed to immediately process them for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility, or in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred."

As of the time of this filing, the BOP is reporting more than fifty inmates at FMC Lexington,, the place of confinement for Mr. Cook, has tested positive for the deadly COVID-19 virus. Mr. Cook's risk of contracting COVID-19 while incarcerated is a factor warranting emergency treatment  of his already time-sensitive motion, and is also relevant to the merits of his request for Compassionate Release, gives this motion emergency treatment.

## MR. COOK'S MEDICAL CONDITION CONSTITUTES AN "EXTRAORDINARY AND COMPELLING REASON" TO REDUCE HIS SENTENCE.

This Court should exercise its' discretion to grant Compassionate Release and reduce Mr. Cook's sentence. Section 3582(c)(1)(A) states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [Title 18 USC §] 3553(a) to the extent they are applicable, if it finds that..."extraordinary and compelling reasons" warrant such a reduction...and that such reduction is consistent with applicable Policy Statements issued by the Sentencing Commission[.]" **See, United States v. Karr, U.S. DIST. LEXIS 27149; United States v. Walker, U.S.DIST. LEXIS 180084; United States v. Cantu, 2019 WL 2498923(S.D. Tex June, 2019)** (The Court, after consideration of all the factors set forth in 18 U.S.C. § 3553(a) especially § 3553(a)(2 (A) found "extraordinary and compelling reasons" for a reduction in Defendants sentence).

Furthermore, the Center for Disease Control and Prevention ("CDC") has stated Inmates with Chronic Medical conditions; such as, COPD, Asthma, Diabetes, Obesity, Sickle-Cell Anemia, and Congestive Heart Failure are at high risk to contracting the deadly COVID-19 virus. Because of Petitioner's age, Sickle-Cell, Hypertension, and Congestive Heart Failure, he is at high risk to contracting COVID-19. With increased infections daily at FMC Lexington and the lack of testing of Staff and Inmates, Petitioner Cook is highly vulnerable.

(13)

## CONSIDERING THE 3553(a) FACTORS, A SENTENCE OF TIME SERVED FOLLOWED BY A THREE-YEAR TERM OF SUPERVISED RELEASE IS SUFFICIENT TO MEET THE GOALS OF SENTENCING.

Under the present statutory regime, the existence of extraordinary and compelling circumstances confers on this Court the authority to consider the relevant Title 18 U.S.C. § 3553(a) factors and determine whether the circumstances warrant a sentence reduction. Under his current (360-month) sentence, Mr. Cook is due to be released on August 05, 2036, and he has been incarcerated since January 13, 2011. Under all circumstances in this case, the Court should conclude that the time Mr. Cook has already served is sufficient to satisfy the purposes of sentencing.

Under **Pepper v. United States, 562 U.S. 470, 490-93(2011),** the Court can and indeed must, consider post-offense developments under U.S.C. § 3553(a), which provides "the most up-to-date picture" of the Petitioner's history and characteristics and "sheds light on the likelihood that [the Petitioner] will engage in future criminal conduct." Here, the overriding factor is Mr. Cook's deteriorating medical condition, which requires monthly out-patient treatment at the University of Kentucky Medical Center ("UKMC"). The required Aphoresis treatment is a life-saving necessity.

As recognized in the Sentencing Commission's Policy Statement on physical condition, extraordinary impairments provide reasons for downward departures for "serious infirm" defendants; including Home Detention at initial sentencing "as efficient as, and less costly than imprisonment." U.S.S. G. § 5H1.4; See also, 18 U.S.C. § 3553(a)(2)(D) (considering of providing needed medical care in the most effective manner).

Although the circumstances of the present offense qualified him for the serious sentence this Court originally imposed, Mr. Cook's health at that time presented treatable conditions that did not guarantee that that sentence would effectively be a sentence to die in prison because Mr. Cook's condition at that time wasn't clear that his conditions would deteriorate. In any even, whether anticipated or unforeseen, his present medical conditions provide grounds for Compassionate Release. See, U.S.S.G. 1B1.14 Application Note 2("For purposes of this Policy Statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in term of imprisonment").

Upon his release, Mr. Cook plans to reside in Humboldt, Tennessee with his Aunt. Mr. Cook will also obtain private Health Insurance to treat his Chronic Medical Issues. Mr. Cook will also find employment to support himself, Mr. Cook's medical conditions, physical limitations, and his imminent need for Aphoresis[4]treatment realistically foreclose a probability of dangerous recidivism. Further, Mr. Cook is 48-years old, and his age places him in the class of prisoners least likely to recidivate. **See, United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders (December, 2017) (available at http://www.ussc.gov/ sites/default/files/pdf/research-and-publications/research-publications/ 2017/2017/2017/_Recidivism-age.pdf.**

Having undergone a substantial period of incaceration and with Chronic medical issues, which require life-sustaining treatment monthly Mr. Cook does not present a danger to any other person or to the community. While incarcerated, Mr. Cook has been a model prisoner with the hope of returning to the community to continue to exude goodness.

---

4 Due to the Outbreak, Petitioner has not received the required Aphoresis treatment.

(15)

Lastly, the Warden and Staff at FMC Lexington is in contravention of the CARES Act of 2020. The CARES Act was signed into Law on March 26, 2020. The CARES Act authorizes the Attorney General ("William Barr") to take several actions regarding the **PREVENTION** of COVID-19 in the Federal Prison System; as well as, granting the authority to the Attorney General to take other decisive action regarding the placement of Prisoners into Home Confinement.

Provisions for testing the Staff and Inmates are included in the CARES Act; however, the Staff at FMC Lexington is not testing inmates pursuant to the guidelines set forth in the CARES Act. Further, Lexington/Fayette County Health Department is investigating FMC Lexington regarding its' refusal to test Staff and Inmates. The County Health Department recommended that all Staff that entered the FMC Lexington facility after April 17, 2020 be tested, yet testing is not occurring and FMC Lexington is now being labled as a hot-spot for the COVID-19 deadly virus.

Moreover, to date, I have not been tested, and I do not know of anyone in the Housing Unit I am confined that has been tested. Asymptomatic people will not show any [s]igns of the virus; however, they can be a carrier of the Novel Coronavirus, which can lead to infecting other Staff and Inmates. Without testing, the Warden is violating the Constitution Right of Inmates and Staff with no impunity. The local media has been posted outside the FMC Lexington facility reporting on the crisis that is caused by the COVID-19 outbreak. Intervention is needed posthaste!

(16)

Finally, Petitioner asserts that his institutional adjustment has been good. He has completed six (6) programs while incarcerated. He has an exemplary disciplinary record. Petitioner further asserts he grew up in a stable home and raised by Christian parents who inculcated wholesome values.

Petitioner is currently employed by Prison Industries (UNICOR) as a Accounts Receivable Clerk, and he has completed 90% on a 4000 Hour Apprenticeship Program (for Office Manager Accreditation), and he has also completed Accreditation for SAP. With the skills acquired during his period of incarceration, Petitioner is certain that employment once released will not be a challenge. **See, Exhibit C.**

**CONCLUSION**

Based on the foregoing, Petitioner contends that "extraordinary and compelling  reasons" exist to justify GRANTing his request for Compassionate Release pursuant to Title 18 U.S.C. § 3582(c)(1)(A), as amended under the First Step Act. PL. 115-391, 132 Stat. 5194 (December 21, 2018).

WHEREFORE, the Scales of Justice exposes your sight to help you to remember to weigh your proceedings with a sound mind and integrity, so that the ends of Justice is served.

For the reasons contained herein, Petitioner PRAYS that this Honorable Court GRANT this emergency request for relief.

Respectfully submitted,

DATE: May 11, 2020
      LEXINGTON, KENTUCKY

STEPHEN COOK
REG. NO. 37453-013
FEDERAL MEDICAL CENTER LEXINGTON
P.O. BOX 14500
LEXINGTON, KENTUCKY 40512

(17)

CERTIFICATE OF SERVICE

----------------------------------------------------------------------

I *Stephen Cook*, hereby declare and affirm under penalty of perjury and in accordance with Title 28 U.S.C.S. § 1746, that the foregoing is a true and accurate document, to the best of my knowledge, understanding, and recollection; a true copy of which has been submitted here to and served upon the Clerk of Court for filing and service upon the Office of the United States Attorney, if and where necessary:

> United States Department of Justice
> AUSA, Jerry Kitchen
> 167 North Main Street
> Suite 800
> Memphis, Tennessee 38103

I further declare and affirm the submission by mail, through the United States Postal Service, United States Prepaid and Affixed, First Class Mail, and being submitted through the Prison Legal Mail Department and under **Houston v. Lack,** 487 US 266, 101 L.Ed 2d 245, 108 S.CT 2379(1988), is to be considered filed when mailed and attested.

This Cetificate of Service is in support of my Motion in Petitioner's case listed on the cover page and is being filed in the United States District Court for the Western District of Tennessee )Western Division). Date of filing is date of mailing.

- Documents included in this mailing are as follows:

MOTION FOR COMPASSIONATE RELEASE

These documents have been palced in the United States Postal Service on:
x ___*May 11th 2020*_____

x ___*Stephen Cook*_____
STEPHEN COOK
REG. NO. 32453-013
FEDERAL MEDICAL CENTER LEXINGTON
P.O. BOX 14500
LEXINGTON, KENTUCKY 40512